UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 15-2315-VAP (SPx) | Date | January 16, 2018 |
|---|---|---|---|
| Title | RePet, Inc. v. Shubin "Victor" Zhao, et. al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
|---|---|---|
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order Granting in Part and Denying in Part Motion for a Protective Order Regarding Depositions of Shuwei Zhao and Jing Jiang [129]**

On December 11, 2017, Shubin Zhao and Nanjing Elble Environmental Protection Technology Co., Ltd. ("Nanjing Elble" or "Elble") filed a Motion for Protective Order for Deposition Notices and Motion to Quash Notice of Taking Deposition of Shuwei Zhao and Jing Jiang (docket no. 129). The motion was supported by a Joint Stipulation ("JS") from the parties setting forth their respective positions. Both sides filed supplemental memoranda on December 26, 2017 (docket nos. 131, 132).

The parties came before the court for a hearing on the motion on January 9, 2018. After considering the parties' papers and oral arguments, the court now denies the motion as to Shuwei Zhao's deposition and grants the motion as to Jing Jiang's deposition, for the reasons that follow.

## BACKGROUND

RePet, Inc. is a company that recycles plastic bottle waste. Shubin Zhao founded the company in 2009 and was its Chief Executive Officer until late October 2014. Plaintiff RePet filed its First Amended Complaint ("FAC") in this case on January 8, 2016, alleging defendant Shubin Zhao converted, stole, and embezzled the company's funds by transferring funds and property to himself and other entities he controlled. On February 10, 2016, defendant answered the FAC, denying the allegations against him and raising several affirmative defenses, including unclean hands. Additionally, on July 15, 2016, Shubin Zhao filed his Second Amended Counterclaim in this case, asserting, inter

alia, various claims on behalf of himself against RePet and an individual counterdefendant.

Nanjing Elble is a manufacturing company that operates in the People's Republic of China, and designs and produces plastic recycling machines and conveyors. Shuwei Zhao ("Zhao"), who is Shubin Zhao's brother, claims to be Elble's Chief Executive Officer. Beginning in October 2010, Nanjing Elble and RePet entered into a series of transactions in which RePet acquired machinery, equipment, and parts from Elble to use in Repet's business. On September 23, 2016, Elble filed a complaint in this court in case number ED CV 16-2030 against RePet seeking $616,369.49 plus interest and costs, and alleging that RePet has failed to pay Elble for the money owed under ten sales contracts executed between May 2013 and December 2014. The court consolidated case number ED CV 16-2030 with this case on February 8, 2017.

RePet first notified Nanjing Elble of its intention to take the depositions of Shuwei Zhao and Jing Jiang on February 24, 2017. Jaczko Decl, Ex. B at 3. Jiang was then Elble's Accounting Manager and responsible for its financial affairs. *See id.*, Ex. C, ¶ 4. Nanjing Elble's Amended Initial Disclosures included Shuwei Zhao and Jing Jiang at the top of its list of individuals likely to have discoverable information. *Id.*, Ex. D at 2.

On March 13, 2017, RePet served Notices of Deposition of Zhao and Jiang, noticing Zhao's deposition for April 6, 2017 and Jiang's deposition for April 7, 2017, pursuant to Federal Rule of Civil Procedure 30, with both depositions to take place in Los Angeles. *Id.*, Exs. A, T. Both Zhao and Jiang are residents of China. *Id.*, Ex. B at 3.

In April 2017, defendants advised Zhao's and Jiang's deposition would have to be delayed due to China's travel restrictions and the inability to quickly obtain a visa. *Id.*, Ex. E at 9. On April 21, 2017, the parties entered into a stipulation to continue the discovery cutoff, agreeing the testimony of Shuwei Zhao and Jing Jiang was "necessary" for all parties' presentation of their claims and defenses, and stating "Elble intends to produce such witnesses in this district, but such witnesses have been unable to obtain visas and/or passports necessary for travel" before the then-current discovery cutoff. *Id.*, Ex. B at 4.

In June 2017, RePet's counsel suggested discussing a deposition schedule for all the witnesses. *Id.*, Ex. G at 1. On July 2, 2017, Elble's counsel emailed that "Shuwei

Zhao is still restricted from travelling and is unavailable for deposition," and "Jiang Jing is no longer an employee of Nanjing Elble and the company is therefore unable to make her available for deposition." *Id.*

A month later, on August 7, 2017, the parties stipulated to a further extension of the discovery cutoff and other dates. Docket no. 117. Among other bases for the requested extension, the stipulation stated:

> [B]oth Mr. Shuwei Zhao and Ms. Jiang are unavailable for deposition. Mr. Shuwei Zhao is not permitted to leave China because Elble is a party to proceedings in China. It is not known when Mr. Zhao will be permitted to leave China, if at all. Further, Ms. Jiang no longer works for Elble and Elble cannot make her available to testify in these proceedings[.]

*Id.* The court granted the requested extension, and after a number of additional requests, the court ultimately set December 8, 2017 as the last date to complete fact witness depositions, but excepted any outstanding discovery obligations or issues from this cutoff. Docket no. 130.

Meanwhile, Elble's counsel repeated his statements regarding Zhao's and Jiang's unavailability in an August 17, 2017 email, stating as to Zhao that he was "unable to leave China and cannot appear for deposition in the United States at the current time." Neach Decl., Ex. 7 at 2. In a responding email five days later, RePet's counsel acknowledged the "comments regarding Shuwei Zhao and Jing Jiang, but again request that, to the extent that they are able to be produced for deposition prior to the cutoff date, you do so." *Id.* at 1.

In a November 3, 2017 email, RePet's counsel stated RePet still wanted to depose Zhao, and asked if there were any new developments in his ability to leave China. Jaczko Decl., Ex. H at 1. Elble's counsel replied on November 7, 2017 that Zhao "remains restricted from traveling outside of China." *Id.*

On November 17, 2017, RePet served Amended Notices of Deposition of Shuwei Zhao and Jing Jiang, with noticed deposition dates of November 28 and 29, 2017, in Los Angeles. Neach Decl., Exs. 1, 2. On November 27, 2017, defendants served objections to the depositions. *Id.*, Ex. 8. In the objections, defendants stated Zhao was restrained from travel outside of China due to litigation involving defendant Elble, stated Jiang was no longer employed by Elble, and objected to both notices being served with insufficient

time for the deponents to appear in the United States in any event. *Id.*

## DISCUSSION

Elble does not contend Shuwei Zhao or Jing Jiang are irrelevant witnesses or that RePet is not entitled to depose them, nor could it reasonably so contend. Indeed, although Elble argues RePet should have simply taken the Rule 30(b)(6) deposition of Zhou Qi instead, a 30(b)(6) witness is not a substitute for the company's self-described CEO and General Manager (Zhao) or for the company's long-time Accounting Manager (Jiang). RePet is entitled to select the witnesses it wishes to depose, and the parties agreed both Zhao and Jiang were necessary witnesses for all parties' claims and defenses. *See* Jaczko Decl., Ex. B at 4.

The question here is whether Elble should nonetheless be excused from producing them for deposition because: (1) Zhao is restricted from leaving China; (2) Jiang is no longer employed with Elble; and (3) the depositions were re-noticed too late.

### Zhao's Deposition

Shubin Zhao and Nanjing Elble seek a protective order under Federal Rule of Civil Procedure 26(c), arguing there is good cause for a protective order blocking Shuwei Zhao's deposition because Chinese travel restrictions prevent him from traveling to the United States. The parties agree that under Chinese law the deposition cannot occur in China. *See* Jaczko Decl., Ex. B at 4. Consequently, if Zhao cannot leave China, he cannot be deposed in this case. But Elble does not cite any authority for the proposition that a foreign travel restriction constitutes good cause for a protective order exempting a party's managing agent from appearing for deposition. RePet, by contrast, cites authority to argue that even assuming Shuwei Zhao does face such a travel restriction, it does not excuse him from appearing in this district for deposition.

A party may depose another party simply by giving notice under Federal Rule of Civil Procedure 30(b)(1). Where a party is a corporation or other entity, under Rule 30(b)(1) another party may notice the deposition of any officer, director, or managing agent of the entity party; no subpoena for such individuals is required. *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 627 & n.1 (C.D. Cal. 2005) (citations omitted); *accord Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D.

327, 332-33 (D. Nev. 2016) ("'Though Rule 30 does not say so expressly, a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party.'") (quoting 8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2107, at p. 507-08 (2010)). Here, there is no dispute that Shuwei Zhao has held himself out as Nanjing Elble's CEO, and therefore RePet properly noticed him for deposition.

RePet noticed the deposition for Los Angeles. "[F]oreign nationals or U.S. citizens living abroad who are parties to an action are subject to this Court's personal jurisdiction and may be deposed wherever the Court directs." *Baraz v. U.S.*, 181 F.R.D. 449, 452 (C.D. Cal. 1998). But foreign litigants "are usually deposed where they reside – i.e., courts rarely require them to return to the United States to have their depositions taken." *Id.*; *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S.D. Iowa*, 482 U.S. 522, 542-46, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987) (discovery may be obtained from foreign litigants under Federal Rules of Civil Procedure, although American courts should exercise special vigilance to protect foreign litigants from unnecessary or unduly burdensome discovery). And a corporate party's deposition is ordinarily taken at is principle place of business, absent other factors persuading the court to order it held elsewhere. *Cadent Ltd.*, 232 F.R.D. at 628-29. Even so, "[t]he general rule with respect to the location of depositions is that the plaintiff must produce its witnesses in the district in which the plaintiff instituted the action, 'unless the plaintiff has shown financial hardship or inability to attend the deposition in that district.'" *Aerocrine AB v. Apieron Inc.*, 267 F.R.D. 105, 108 (D. Del. 2010) (citation omitted); *see In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010) ("courts ordinarily presume that a plaintiff may be deposed in the judicial district where the action was brought, inasmuch as the plaintiff, in selecting the forum, has effectively consented to participation in legal proceedings there") (citation omitted).

Here, Nanjing Elble initiated the consolidated lawsuit in case number ED CV 16-2030 in this court, and thus effectively consented to be subjected to discovery in this forum. Whatever consideration the court might otherwise have given to allowing Shuwei Zhao's deposition to occur in China instead of this district is inapplicable here, given the consensus that under Chinese law Zhao may not be deposed for this case in China. Indeed, in April Elble acknowledged that the deposition should occur in this district, stating it intended to produce Zhao for deposition in this district. *See* Jaczko Decl., Ex. B at 4.

Elble now contends, however, that it is impossible for it to produce Zhao for deposition because he cannot leave China. To overcome the presumption that a foreign plaintiff must appear in the forum district for deposition, the "foreign plaintiff must persuasively demonstrate that requiring him to travel to the forum district for his deposition would, for physical or financial reasons, be practically impossible, or that it would otherwise be fundamentally unfair." *Outsidewall Tire Litig.*, 267 F.R.D. at 471. Thus, in *Baraz*, the court denied the defendants' motion to dismiss and effectively excused the plaintiff's failure to attend his deposition in the forum district, and instead ordered that he be allowed to testify by way of a telephonic deposition or written interrogatories, where the plaintiff had been deported to Iran and the United States would not permit plaintiff to return. *Baraz*, 181 F.R.D. at 451-53. By contrast, in a different case where the plaintiff company's president was precluded from leaving Egypt by an Egyptian travel ban, the court refused to excuse the plaintiff from producing its witnesses in California, and after the president failed to appear for his deposition as ordered, the court dismissed the plaintiff's case. *Egyptian Chamois Co. v. Evergreen Marine Corp.*, 2001 WL 1737458, at *2-*6 (C.D. Cal. Jan. 25, 2001).

The different outcomes of the *Baraz* and *Egyptian Chamois* cases appear to be a result of different findings as to whether the plaintiff was at fault for the failure to appear for deposition. In *Baraz*, the court found the defendants "failed to demonstrate that Plaintiff's failure to attend his deposition was the result of wilfulness, bad faith, or fault on Plaintiff's part," and in fact the plaintiff had "diligently attempted to gain entry into the United States for the purpose of attending his own deposition." *Baraz*, 181 F.R.D. at 452. Further, *Baraz* was a civil rights case in which the United States was both a defendant and the government that was preventing the plaintiff from entering the country to be deposed. Under these circumstances, the court found "[t]he interests of justice preclude the Government from foreclosing Plaintiff's ability to be deposed with one hand, and then tossing out his lawsuit for an inability to be present at the deposition with the other." *Id.* at 453.

In *Egyptian Chamois*, the travel ban was issued by Egypt's Attorney General, who was not a party to the case. Although the plaintiff argued the ban resulted from slanderous statements made by a defendant's insurance investigator in Egypt, the court found "the travel ban was issued as a result of [plaintiff's president's] conduct." *Egyptian Chamois*, 2001 WL 1737458, at *3, *5. "[A] foreign-law prohibition against compliance with a discovery order will not excuse a violation of the order when the

foreign-law prohibition was fostered by the disobedient party's conduct." *Id.* at *5 (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474-75 (9th Cir. 1992)). The court therefore dismissed the plaintiff's case, finding the plaintiff company president's failure to appear for deposition in the forum justified dismissal because the failure was the president's fault, due to his conduct that resulted in the travel ban. *Id.* at *4-*6.

RePet cites to *Egyptian Chamois* to argue that any travel restriction China may have imposed on Shuwei Zhao does not excuse him from appearing for deposition in Los Angeles, and that if he does not appear, Elble's claims should be dismissed. But as noted, whether or not Zhao should be excused depends on whether he is at fault for his alleged inability to appear. The court therefore turns to the alleged travel restriction in this case.

According to Elble, Shuwei Zhao last traveled to the United States on October 8, 2015, and apart from brief travel to Mexico, he stayed in the United States until his return to China on January 20, 2017. Elble contends Zhao has been unable to leave China since his return. Zhao's travel dates are supported by his own declaration, and by admission and exit stamps on one page of Zhao's passport. *See* Suppl. Zhao Decl. ¶ 2, Ex. 1. As no other pages of his passport were submitted, this is hardly conclusive proof that Zhao has not traveled to and from China more recently. Further, the court notes Zhao has a B1/B2 visa that is not set to expire until March 31, 2025, but the October 8, 2015 stamp in his passport shows he was permitted entry on that occasion for only six months, until April 7, 2016. *See id.*, Ex. 1. It may well be that Zhao obtained a lawful extension of his stay (rather than having traveled to and from China on dates other than those shown), but no evidence was offered regarding how he was permitted to stay more than six months. Notwithstanding these concerns, however, on balance the record indicates Zhao returned to China on January 20, 2017 and has not left since.[1]

---

[1] RePet argues the deposition testimony of Lucy Li, Zhao's sister-in-law, shows Zhao must have traveled outside China after January 20, 2017. But Li's testimony was that she last saw Zhao in the United States was when he was headed to the airport to return to China, sometime before Chinese New Year last year. Jaczko Decl., Ex. K at 2-4. Chinese New Year in 2017 was on January 28, so Li's testimony is consistent with Zhao's declaration that he returned to China on January 20, 2017.

Shuwei Zhao further declares that, as a result of a judgment entered against him and Elble on February 3, 2016 in China, he is unable to leave China. Zhao Decl., ¶ 2. Elble initially supported this statement by submitting a February 3, 2016 court judgment in case number (2015) Qin Zhi Zi No. 01697 by the People's Court of Qinhuai District, Nanjing that required a payment of approximately 4 million yuan, equivalent to something over $600,000. *See* Neach Decl., Ex. 3. As RePet points out, the judgment does not explicitly state Zhao is restricted from traveling outside of China. Elble further supported its contention by providing the following statement from the United States Department of State website: "court orders to pay a settlement . . . *may result* in an exit ban which will prohibit your departure from China until the issue is resolved." Jaczko Decl, Ex. I at 2 (emphasis added); JS at 5 (emphasis added).

Elble's supplemental filing includes a certificate from Jiangsu Yongheng Partners Law Firm, which states Zhao was involved in case number (2015) ChengZhi Zi No. 4742 of the Jiangyin Municipal People's Court, which restricted him from traveling by plane. Suppl. Neach Decl., Ex. A. The filing also provides a link to an article in the Library of Congress on China's enforcement of civil judgments. Elble's Supp. Mem. at 1-2. The article states any person on the List of Dishonest Judgment Debtors would not be allowed to travel on a plane. Laney Zhang, *China: New Supreme Court Interpretations on Enforcement of Civil Judgments*.[2] The certificate from the law firm certifies Zhao is on this List. Suppl. Neach Decl., Ex. A. As RePet points out, the cases cited in defendants' initial and supplemental filings have different case numbers. At the hearing, Elble asserted there are in fact multiple judgments against Zhao that prevent him from leaving China.

Although Elble did not actually submit the List of Dishonest Judgment Debtors to show Zhao is on the list, there appears to be no real dispute that Zhao was at some point placed on the List. But Elble has offered no evidence as to when Zhao was placed on the List, nor has Elble shown Zhao remains on the list to date. According to the Library of Congress article by Laney Zhang, judgment debtors typically remain on the list for two years. If Zhao was placed on the list on February 3, 2016, his time on the list may almost be up. And if he was placed on the list in 2015 due to the judgment referenced in Elble's

---

2 http://www.loc.gov/law/foreign-news/article/china-new-supreme-court-interpretations-on-enforcement-of-civil-judgments/

supplemental filing, or if the judgment has since been paid, he may already be off the list. Nor has Elble submitted any information indicating Zhao has taken any steps to confirm he is presently unable to travel, or that there are no exceptions that may apply to him. In short, the court finds Elble has failed to meet its burden to show it would practically impossible for him to travel to this district for his deposition if the court denies Elble's motion and orders Zhao to appear.

Further, even assuming it is impossible for Zhao to appear in this district for deposition, the record indicates this Zhao's own fault. There is no dispute that Zhao is on the List of Dishonest Judgment Debtors because he owes money in China due to one or more judgments entered against him there. And according to RePet's interpretation and translation of the February 3, 2016 judgment and order, Zhao was paced on the List because the Chinese court found there were circumstances indicating Elble and Zhao had refused to pay the judgment "while being equipped with the ability to perform." Wu Decl. ¶¶ 5-6, Ex. A. If Elble and Zhao are simply refusing to pay the judgment, it is entirely within their power to resolve their debt so that Zhao may be removed from the List. Further, even if they are unable to pay the full judgment, the judgment still flows from their own conduct, just as in *Egyptian Chamois*.

Additionally, unlike in *Baraz*, where the court found the plaintiff had diligently tried to enter the United States, there is nothing in the record here to indicate Zhao has made any effort to pay the Chinese judgment in whole or in part or otherwise take any steps that might result in his removal from the List. On the contrary, it appears that once Zhao learned he was placed on the List, he has used that placement to shield himself from his full discovery obligations in this case.

For these reasons, the court DENIES Elble's motion for a protective order as to Shuwei Zhao's deposition, and orders Zhao to appear for deposition as stated below. The court is not prepared to say, on this record, that it will recommend dismissal of Elble's claims if Zhao does not appear; however, that is a possibility, as are other sanctions. Accordingly, Zhao must do more than simply "go through the motions," as Elble's counsel suggested at the hearing. Zhao must take every step he lawfully and reasonably can to try to appear in this district for his deposition.

**Jiang's Deposition**

Just as with Shuwei Zhao, RePet notified Nanjing Elble of its intention to take Jing Jiang's deposition on February 24, 2017, and then served Elble with a Notice of Deposition of Jiang on March 13, 2017, noticing the deposition for April 7, 2017. Jaczko Decl., Ex. B at 3, Ex. T. And just as with Zhao, RePet was able to simply notice Jiang's deposition under Rule 30(b)(1) because, as Elble's Accounting Manager, Jiang was a managing agent. Elble does not dispute this, and indeed in April stated its intention to produce Jiang for deposition in "this district," but believed it would take two to three months to produce the necessary visas and passports for such travel. *Id.*, Ex. B at 4.

But before, Jiang was deposed, her employment with Elble was terminated. Elble now argues that because Jiang's employment terminated on June 12, 2017, it does not have the power to require her to appear for deposition. Elble contends she is now a third party and her appearance may only be obtained through subpoena. As Elble well knows, however, Jiang is outside this court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A). RePet maintains this court still can and should compel Elble to produce Jiang for deposition.

An employee's status as a managing agent is usually determined as of the time of deposition. *Edu-Science (USA), Inc. v. Intubrite, LLC*, 2013 WL 4716232, at *3 (S.D. Cal. Sep. 3, 2013); *Rundquist v. Vapiano SE*, 277 F.R.D. 205, 208 (D.D.C. 2011); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 49 (E.D. Va. 2010). But there are exceptions; for example, "when a corporation terminates an officer in light of pending litigation." *Edu-Science*, 2013 WL 4716232 at *4 (quoting *Rundquist*, 277 F.R.D. at 208); *E.I. DuPont de Nemours*, 268 F.R.D. at 50-51 ("the timing and circumstances of [defendant's] reassignment or termination of its employees render the true status of the proposed deponents highly suspect, and allow for a strong inference that [the defendant] is moving its employees around like chessmen, conveniently shielding them from [RePet's] access."). Where a key witness has been terminated by a party during a litigation and after being put on notice by the opposing party of its intention to take that witness's deposition, the court can apply the managing agent test as of the date the witness's deposition was requested. *See In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL5440789, at *5-6 (N.D. Cal. Sep. 15, 2015).

Here, Elble maintains Jiang's employment was terminated due to Elble's financial

difficulties. Zhao Decl. ¶ 3. But just as the court noted in *E.I. DuPont de Nemours*, the timing and circumstances of Elble's termination of Jiang, after her deposition had already been noticed and agreed to, render her status as only a former managing agent "highly suspect." *See E.I. DuPont de Nemours*, 268 F.R.D. at 51. Moreover, even if her termination was purely for financial reasons, it occurred well after RePet had formally noticed her deposition, and well after she was first noticed to appear for deposition in Los Angeles. She was a managing agent as of the date she was first to appear, and Elble agreed to produce her for deposition on that basis. Under these circumstances, the court concludes it may compel Elble to produce her for deposition.

The question remains whether the court should nonetheless grant Elble's request for a protective order as to Jiang. Elble argues RePet's late re-noticing of Jiang's deposition was merely a strategic move to try to obtain dismissal of Elble's case, and should be denied on that basis. Elble makes the same argument with respect to Zhao's deposition, but it carries more force as to Jiang. The court does not doubt RePet's sincere desire to depose both Zhao and Jiang. But as recounted above, even after learning of Zhao's travel restriction, and even after acknowledging the restriction (although not how long it would last) in stipulation, RePet continued to inquire of Elble as to whether Zhao could be deposed, right up until it re-noticed his deposition. By contrast, in the August 7, 2017 stipulation, the parties, including RePet, stipulated that since Jiang no longer works for Elble, "Elble cannot make her available to testify." Docket no. 117. As just discussed, the court disagrees with that legal conclusion, and apparently RePet does now too. But given RePet's seeming abandonment in August of its effort to depose Jiang, its late decision to re-notice Jiang's deposition is problematic.

Had RePet re-noticed her deposition well in advance of the discovery cutoff, the problem would not exist. But RePet waited until November 17 to re-notice her deposition, and set the date only twelve days later. It did essentially the same with Zhao, but again, RePet had been continuing to inquire as to Zhao's availability. Moreover, Zhao has a visa that does not expire until 2025. Absent his presence on the List of Dishonest Judgment Debtors (and maybe even with that), Zhao could appear in the United States on short notice. The situation with Jiang is almost certainly very different. There is no reason to believe she continued to pursue her visa after her termination with Elble. And RePet was informed last spring that it would take her two or three months to secure a visa. Given this, RePet's decision to wait until the eve of the discovery cutoff to re-notice Jiang's deposition on twelve days' notice was unreasonable. *See* Fed. R. Civ. P.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV 15-2315-VAP (SPx) | Date | January 16, 2018 |
| Title | RePet, Inc. v. Shubin "Victor" Zhao, et. al. | | |

30(b)(1) ("must give reasonable written notice").

Because the court finds RePet did not give reasonable notice of Jing Jiang's deposition after seeming to abandon efforts to depose her, and because there appears insufficient time to remedy this defect now, prior to the March 29, 2018 trial date, the court GRANTS Elble's motion for a protective order as to Jiang's deposition.

## **CONCLUSION**

For the reasons discussed above, IT IS THEREFORE ORDERED that Shubin Zhao's and Nanjing Elble's Motion for Protective Order and/or to Quash Re: Deposition Notices (docket no. 129) is GRANTED IN PART AND DENIED IN PART, as set forth above and as follows:

1. The motion is DENIED as to Shuwei Zhao's deposition. Nanjing Elble is ordered to produce Shuwei Zhao for deposition in this district at a date and time to be agreed by the parties, but no later than February 20, 2018. If Shuwei Zhao fails to appear for deposition by that date, RePet may apply for sanctions.

2. The motion is GRANTED as to Jing Jiang's deposition. RePet's notice of Jiang's deposition is hereby QUASHED.